IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MULTIMEDIA CONTENT MANAGEMENT LLC, Plaintiff, | § § § § § | Civil Case No. 6:17-CV-00307 |
| v. | § § § | JURY TRIAL DEMANDED |
| GRANDE COMMUNICATIONS NETWORKS LLC, Defendant. | § § § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Multimedia Content Management LLC ("MCM" or "Plaintiff") brings this action pursuant to 35 U.S.C. §§ 1 *et seq.* seeking damages against Defendant Grande Communications Networks LLC ("Grande") for infringement of United States Patent Nos. 8,799,468 ("the '468 Patent") and 9,465,925 ("the '925 Patent") (collectively, "the Patents-in-Suit"), and alleges the following:

## THE PARTIES

1.    Plaintiff Multimedia Content Management LLC is a company formed under the laws of the State of Delaware.

2.    On information and belief, Defendant Grande Communications Networks LLC is a company formed under the laws of the State of Delaware with its headquarters at 401 Carlson Circle, San Marcos, Texas 78666. On information and belief, Grande offers cable television service in and around Austin, Midland, Odessa, San Antonio, San Marcos, Temple, and Waco—all within the Western District of Texas.

## JURISDICTION AND VENUE

3.     This action arises under the patent laws of the United States, Title 35 of the United States Code and this Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this District and Division under 28 U.S.C. § 1400(b).

4.     The Court has personal jurisdiction over Grande as Grande has systematic and continuous business contacts with the State of Texas, this District and this Division, including, *inter alia*, the presence of various sales and service centers in Temple and Waco within this Division, real and personal property in Bell and McLennan Counties, employees based in Waco, and through its provision of cable television and internet services to thousands of subscribers who reside throughout the State of Texas, this District and this Division.

5.     On information and belief and as further explained herein, Grande has committed and continues to commit acts of infringement relating to United States Patent No. 8,799,468 and United States Patent No. 9,465,925 in this District and Division through Grande's provision of cable television services in this District and Division.

6.     Grande has a regular and established place of business in this District and Division as, on information and belief, Grande has regular and established places of business in Bell and McLennan Counties, including an office located in Temple at 8 East Barton Avenue, Temple, Texas 76501 and an office in Waco located at 7200 Imperial Drive, Waco, Texas 76712.

PLAINTIFF'S ORIGINAL COMPLAINT                                              Page 2

7.      Considering the above and pursuant to 28 U.S.C. § 1400(b), venue is proper in this District and Division as Grande has committed and continues to commit acts of infringement and has a regular and established place of business in this District and Division.

## BACKGROUND

8.      Cable television began as an attempt by communities in mountainous or other remote locations to receive over-the-air broadcasts. This service used "community antennas" that were then connected to subscribers' homes by cable to provide access to the broadcast signal. *See* https://www.calcable.org/learn/history-of-cable/ (Copyright 2017, California Cable & Telecommunications Association) (last accessed June 27, 2017).

9.      Since these early days of cable television in the 1940s and 1950s, the cable television industry has undergone vast technological change such that the "technological landscape is unrecognizable compared with even a few years ago" "thanks to broadband cable and other breakthroughs." *Id.* One key change in cable television was the transition from "one-way" cable television, i.e., the broadcast is simply provided to users of the cable television system, to "two-way" cable television, i.e., the user of a cable television can demand greater functionality above and beyond the simple provision of broadcast services.

10.     This change from one-way to two-way systems gained momentum with the advent of more powerful computer technology and with faster broadband transmission. These two technological changes provided internet and cable television providers, such as Grande, with an opportunity to provide more and varied services

to its subscribers. It also, however, provided a greater opportunity for bad actors to access these services while attempting to circumvent copyright and other protections for the content provided by these services. The rise of peer-to-peer ("P2P") computing and the increasing ease of networking technologies beginning in the early 2000s allowed users to share large files efficiently over distributed networks, particularly copyrighted material like movies, and increased the opportunities for bad actors.

11.     To protect against P2P file-sharing services, such as BitTorrent, the cable television industry began working in the early 21st century on standards and other technologies to combat piracy. Since that time, the industry has struggled to find flexible solutions to combat threats from unauthorized users.

## GRANDE

12.     On information and belief, Grande entered the cable television market "over 10 years ago." (mygrande.com/about: "Grande launched over 10 years ago….") (last accessed August 2017).

13.     In 2011, Grande began providing TIVO Premiere service to its subscribers for $12.99 per month. This service promised to "re-invent[] its TV service" by "bringing the vast new world of broadband entertainment choices directly to its customers' TV screens." (Ex. I, Nov. 14, 2011 Press Release "Grande Communications Launches TV Viewing Game-Changer TiVo Premiere," at 1.) Further, Grande advertises that "TiVo Premiere enables viewers to find and watch their favorite videos from YouTube, or TV shows and movies from Amazon Instant Video right on their TV screens." (*Id.*)

14.     The TiVo Premiere service provided by Grande includes both the TiVo Premiere DVR service and the TiVo Premiere Q DVR service. As part of its TiVo Premiere service Grande provides a "two-tuner DVR," while the "Premiere Q DVR is a four-tuner DVR and is also known as the 'Multi-Room TiVo.'" (Ex. II, TiVo Premiere/Premiere Q from Grande Viewer's Guide ("Premiere Viewer's Guide"), at iv.)

15.     Although a user can purchase a TiVo DVR that is compatible with the services provided by Grande, on information and belief, most Grande users who subscribe to the TiVo Premiere service lease a device supplied by Grande. (Ex. III, All Frequently Asked Questions (FAQ) (hereinafter "FAQ"), at 6.) On information and belief, users who supply their own TiVo device will not be able to access all of the services available from Grande, such as OnDemand. (*Id.* at 5-6.)

16.     On information and belief, the TiVo Premiere service provided by Grande is governed by a Terms of Service contract, Basic Conditions of Service Regarding Cable TV & Internet Service. (*See generally*, Ex. IV, Basic Conditions of Service Regarding Cable TV & Internet Service (hereinafter "TOS").) Under its TOS contract, Grande defines "equipment" as "one or more of the following: digital receiver, broadband modem, telephony port, remote-control unit, A/B switch, or any other device installed by Grande in or around the Premises, or provided by Grande, necessary or convenient for Customer to receive and utilize Services from Grande." (*Id.* at 1.) "All equipment of any kind provided by Grande remains the sole property of Grande"; Grande leases this equipment to its subscribers. (*Id.*) Under these contractual terms, Grande requires that its subscribers agree "not to attempt to make

PLAINTIFF'S ORIGINAL COMPLAINT                                    Page 5

repairs to, or to alter, disturb or tamper with the Equipment and that you will not permit anyone other than Grande or Grande's agent to perform any work on the Equipment." (*Id.* at 1.) Additionally, Grande requires its subscribers to authorize "Grande to charge your Visa, MasterCard, other credit card, or other payment method that has been authorized by you for any such outstanding Service and Equipment charges." (*Id.* at 2.)

17.    On information and belief, Grande's TiVo Premiere devices communicate with equipment at one of Grande's headends to provide content to subscribers based on the specific requirements for each subscriber. On information and belief, Grande has at least one headend for each of its service areas. These headends allow for the distribution of content from any of several sources, including over the air and satellite, to its subscribers over Grande's cable network. Each headend may include equipment such as digital receivers, digital network control systems, broad-band integrated gateways, head-end Quadrature Phase Shift Keyed Modulator ("QSPK") and Quadrature Amplitude Modulator ("QAM") modulators, and Digital Audio-Visual Council ("DAVIC") controllers.

## THE PATENTS-IN-SUIT

18.    The United States Patent and Trademark Office duly and legally issued United States Patent No. 8,799,468 to Robert M. Burke II and David Z. Carman on August 5, 2014. The '468 Patent is titled "System for Regulating Access to and Distributing Content in a Network." The '468 Patent is a continuation of United States Patent Application No. 10/989,023, now United States Patent No. 8,122,128, and claims priority to United States Provisional Application No. 60/523,057 filed on

PLAINTIFF'S ORIGINAL COMPLAINT                                        Page 6

November 18, 2003. A true and correct copy of the '468 Patent is attached hereto as Exhibit V.

19.     The United States Patent and Trademark Office duly and legally issued United States Patent No. 9,465,925 to Robert M. Burke II and David Z. Carman on October 11, 2016. The '925 Patent is titled "System for Regulating Access to and Distributing Content in a Network." The '925 Patent is a continuation of the application for the '468 Patent, and claims priority to United States Provisional Application No. 60/523,057 filed on November 18, 2003. A true and correct copy of the '925 Patent is attached hereto as Exhibit VI.

20.     MCM is the assignee of all right, title, and interest to the '468 Patent and the '925 Patent. Accordingly, MCM has standing to bring the instant suit to enforce its rights under the patent laws of the United States, including the right to collect damages for past infringement. Neither MCM nor any previous assignee has licensed the Patents-in-Suit to Grande. MCM has not practiced the claimed inventions of the Patents-in-Suit. On information and belief, no prior assignee has practiced the claimed inventions.

21.     The Patents-in-Suit describe a system for regulating access to and distributing content via a network while protecting the intellectual property rights of content holders. The claims of the Patents-in-Suit are directed to a system for regulating access to and distributing content via a network. The claims of the Patents-in-Suit recite a system and method to rapidly and efficiently deliver content, such as music, video, games, broadband data, real-time audio and voice applications, and software, to subscribers while respecting the rights of the owners of the

intellectual property that protect such content. (Ex. V, the '468 Patent, at col. 1, ll. 24-51.[1]) Additionally, some claims of the Patents-in-Suit recite a system of disallowing access to certain material on the Internet. (*Id.*, at col. 2, ll. 39-52.)

22.     The specifications of the Patents-in-Suit highlight the reluctance of the motion picture industry to provide its licensed content over the internet "having seen the negative impact that piracy has already had on the Music Recording Industry." (*Id.*, at col. 2, ll. 60-62.) To avoid a similar fate, service providers—like cable TV providers—and content providers—like the motion picture industry—need some assurance that their intellectual property (music, video, games, software, etc.) will be secure from illegal downloading and transmission over the Internet." (*Id.*, col. 1, ll. 63-64.)

## COUNT I: INFRINGEMENT OF UNITED STATES PATENT NO. 8,799,468

23.     Plaintiff refers to and incorporates herein all the allegations of the previous paragraphs.

24.     On information and belief, Grande directly infringed and continues to infringe at least Claims 1, 15, 23, and 36 of the '468 Patent.

### Infringement of Claim 1 of the '468 Patent

25.     Claim 1 of the '468 Patent recites:

> A system for regulating access to a service provider network, the system comprising:
> a controller node coupled to the service provider network, the controller node comprising:
>> a first processor configured to generate controller instructions, and

---

[1] The specifications of the '468 Patent and the '925 Patent are identical in substance. Therefore, citation to the specification in this Complaint will be to the specification of the '468 Patent for the convenience of the Court and for the sake of brevity.

a first network interface configured to transmit the controller instructions over the service provider network to a plurality of gateway units; and

the plurality of gateway units, each of the plurality of gateway units comprising:

a user interface configured to receive user-entered content requests for the service provider network;

a second network interface coupled to the service provider network and configured to receive the controller instructions from the controller node through the service provider network; and

a second processor coupled to the user interface and the second network interface, wherein the second processor is configured to selectively transmit the content requests to the service provider network in accordance with the controller instructions, and transfer received content data responsive to the transmitted content requests from the service provider network via the second network interface.

26. On information and belief, Grande directly infringed and continues to infringe Claim 1 of the '468 Patent by offering for sale, selling, and/or using the claimed system by offering and providing to its subscribers, at least, its TiVo Premiere service along with the products provided or operated by Grande in conjunction with that service (collectively, "Accused Instrumentalities"). MCM has not authorized Grande's sale, offer for sale, or use of the Accused Instrumentalities.

27. On information and belief, the Accused Instrumentalities include or use a system that regulates access to a service provider network. The system includes a controller node coupled to Grande's network and a plurality of gateway units.

28. On information and belief, Grande uses multiple headends for its various service areas. These headends contain equipment such as digital receivers, digital network control systems, broad-band integrated gateways, head-end QSPK and QAM modulators, or DAVIC controllers. The headends operate as the recited

PLAINTIFF'S ORIGINAL COMPLAINT                                    Page 9

controller nodes and, on information and belief, include a processor to generate controller instructions and a network interface configured to transmit controller instructions through Grande's network. These controller instructions regulate subscriber access to and distribution of content on the network.   These controller nodes, on information and belief, are used to control gateway units, e.g., the TiVo Premiere devices provided by Grande to its subscribers.

29.    On information and belief, each Grande headend includes at least a first processor configured to generate controller instructions and a first network interface configured to transmit the controller instructions over Grande's service provider network to a plurality of TiVo Premiere devices.

30.    The Accused Instrumentalities include a user interface configured to receive user-entered content requests for the service provider network as illustrated by Figure 1, below. (Ex. II, TiVo Premiere/Premiere Q from Grande Viewer's Guide ("Viewer's Guide"), at 16.)



**Figure 1. First Portal: TiVo Premiere by Grande.**

31.     Each gateway unit, i.e., TiVo Premiere device, includes a user interface configured to receive user-entered content requests for the Grande network as demonstrated by Figure 1 above. This user interface provides a user the ability to select one of the movies or web shows in the top, leftmost portion of the display (in this example, the movie "Serenity" is suggested and three web shows/clips are denoted as being "Popular on Web").

32.     Each gateway unit in the system also includes a second network interface coupled to the service provider network and configured to receive the controller instructions from the controller node through the service provider network. On information and belief, this second network interface is the DOCSIS modem of the TiVo Premiere Device.

33.     Each gateway unit in the system includes a second processor coupled to the user interface and the second network interface, wherein the second processor is configured to selectively transmit the content requests to the service provider network in accordance with the controller instructions, and transfer received content data responsive to the transmitted content requests from the service provider network via the second network interface. For example, the controller instructions from the controller node may provide a list of shows, movies or web content that is presented to the user as part of the user interface, as indicated in Figure 2 below.



**Figure 2. Magnification of Suggestion Frame from Figure 1.**

34.    The items illustrated above in Figure 2 change depending on the screen within TiVo Central that a subscriber is viewing and other variables. For example, in Figure 3 below, the shows, movies, and/or web clips in the top, leftmost portion of the user interface have changed as highlighted in Figure 4.



**Figure 3. Another Screenshot from Grande TiVo Central**



**Figure 4. Magnification of suggestion frame in First Portal.**

35.    Further, prior to 2016, Hulu had been unavailable on Grande's TiVo Premiere service due to "[c]ontractual issues between the studio and Hulu." (Ex. III, FAQ, at 6.) As such, prior to 2016, Grande used a controller instruction of conditional denial from the headend to prevent subscriber access to Hulu, a subscription video

on demand service. Additionally, the TiVo Premiere device as used by Grande limits the ability of its subscribers to access certain portions of the Internet when searching. (*Id.*) For example, Grande notes that "TiVo has an integrated search capability that finds TV shows and movies across Live TV, Grande 6On Demand, Netflix, YouTube web video's (*sic*), and delivers personalized programs specifically for you. It is not designed to search the entire Internet." (*Id.*)

### Infringement of Claim 15 of the '468 Patent

36.    Claim 15 of the '468 Patent recites:

The system of claim 1, wherein

the controller instructions are configured to further enable the gateway units to receive additional software via the second network interface for execution on the second processor,

the software enabling at least one of a fee-based network service, network video calling, and network gaming.

37.    As noted above in Paragraphs 23-35, on information and belief Claim 1 of the '468 Patent is infringed by the Accused Instrumentalities.

38.    On information and belief, the Accused Instrumentalities use controller instructions configured to receive additional software via the second network interface for execution on a second processor of its TiVo Premiere service. This additional software enables at least one fee-based network service.

39.    As an example of a fee-based network service, Grande has announced the addition of the Hulu app "to enable its subscribers to watch Hulu programming as a channel through the same set-top box used to watch Live TV." (Ex. VII, May 19, 2016 Press Release Hulu Launches as a channel on RCN and Grande

Communications, at 1.) Grande provides Hulu programming through the DVR powered by TiVo. (*Id.*) Hulu is a fee-based network service. (*Id.* at 2 (noting that "[c]ustomers must subscribe separately to Grande Communications or RCN's Digital TV service powered by TiVo and have a subscription to Hulu").) Previously, (prior to 2016) Hulu had been unavailable on Grande's TiVo Premiere service due to "[c]ontractual issues between the studio and Hulu." (Ex. III, FAQ, at 6.)

### Infringement of Claim 23 of the '468 Patent

40.     Claim 23 of the '468 Patent recites:

> A method for regulating access to a service provider network, the method comprising:
> generating, by a controller node coupled to the service provider network, controller instructions;
> transmitting the controller instructions, by the controller node, to a plurality of gateway units of the service provider network;
> receiving, by the gateway units, user-entered content requests for the service provider network;
> receiving, by the gateway units, from the controller node, the controller instructions;
> selectively transmitting, by the plurality of gateway units, the content requests to the service provider network in accordance with the controller instructions; and
> transferring, by the gateway units, received content data responsive to the transmitted content requests from the service provider network.

41.     On information and belief, Grande directly infringed and continues to infringe Claim 23 of the '468 Patent by offering for sale, selling, and using the Accused Instrumentalities. The Plaintiff has not authorized Grande's sale, offer for sale, or use of the Accused Instrumentalities.

42.     On information and belief, the Accused Instrumentalities perform a method for regulating access to a service provider network.

43.     On information and belief, the Grande headends contain network interfaces that are used to transmit the controller instructions via Grande's network to a plurality of gateway units, i.e., TiVo Premiere devices.

44.     The Accused Instrumentalities receive user-entered content requests as illustrated by Figure 5, below. (Ex. II, TiVo Premiere/Premiere Q from Grande Viewer's Guide ("Viewer's Guide"), at 16.)



**Figure 5. Search Interface for TiVo Premiere Service by Grande.**

45.     On information and belief, the Accused Instrumentalities receive user-entered content requests for the service provider network. For example, each gateway unit, i.e., TiVo Premiere device, includes a user interface configured to receive over the Grande network user-entered content requests corresponding to the controller instructions (as demonstrated by Figure 5 above). This user interface provides a user the ability to select one of the movies or web shows in the top, leftmost portion of the display (in this example, Serenity or three web shows/clips).

46.     On information and belief, the Accused Instrumentalities (e.g., including TiVo Premiere devices on the Grande network) selectively transmit the

content requests to the provider network in accordance with the controller instructions.

47.     In response to the content requests from TiVo Premiere device, received content from Grande's network is transferred to the subscriber.

<u>Infringement of Claim 36 of the '468 Patent</u>

48.     Claim 36 of the '468 Patent recites:

> The method of claim 23, further comprising
> a gateway unit receiving additional software for execution,
> the software enabling at least one of a fee-based network
> service, network video calling, and network gaming.

49.     As noted above in Paragraphs 40-47, on information and belief, Claim 23 of the '468 Patent is infringed by and continues to be infringed by the Accused Instrumentalities.

50.     On information and belief, the Accused Instrumentalities, (e.g., including Grande's TiVo Premiere device) receives additional software enabling a fee-based network service.

51.     As an example, Grande has announced the edition of the Hulu app "to enable its subscribers to watch Hulu programming as a channel through the same set-top box used to watch Live TV." (Ex. VII, May 19, 2016 Press Release Hulu Launches as a channel on RCN and Grande Communications, at 1.) Grande provides Hulu programming through the DVR powered by TiVo. (*Id.*) Hulu is a fee-based network service. (*Id.* at 2 (noting that "[c]ustomers must subscribe separately to Grande Communications or RCN's Digital TV service powered by TiVo and have a subscription to Hulu").) Previously, Hulu had been unavailable on Grande's TiVo

Premiere service due to "[c]ontractual issues between the studio and Hulu." (Ex. III, FAQ, at 6.)

52.    As shown above, every element of Claims 1, 15, 23 and 36 is found in the Accused Instrumentalities.

53.    Plaintiff has been damaged by Grande's infringing conduct and is entitled to money damages adequate to compensate for Grande's infringement of the '468 Patent, but in no event less than a reasonable royalty for the use made of the claimed inventions by Grande, together with interests and costs as fixed by the Court pursuant to 35 U.S.C § 284.

## COUNT II: INFRINGEMENT OF UNITED STATES PATENT NO. 9,465,925

54.    Plaintiff refers to and incorporates herein all the allegations of the previous Paragraphs.

55.    On information and belief, Grande directly infringed and continues to infringe at least Claims 1 and 29 of the '925 Patent.

### Infringement of Claim 1 of the '925 Patent

56.    Claim 1 of the '925 Patent recites:

> A system for regulating access to a service provider network, the system comprising:
> a controller node coupled to the service provider network, the controller node comprising:
>> a first processor to generate controller instructions, and
>> first one or more network interfaces to transmit the controller instructions over the service provider network to a plurality of network elements; and
> the plurality of network elements, each of the plurality of network elements comprising:
>> second one or more network interfaces coupled to the service provider network to receive the controller

> instructions from the controller node through the service provider network; and
>
> at least a second processor coupled to the second one or more network interfaces, wherein the second processor is to selectively transmit content requests to the service provider network in accordance with the controller instructions, and transfer received content data responsive to the transmitted content requests from the service provider network via the second one or more network interfaces.

57. On information and belief, Grande directly infringed and continues to infringe Claim 1 of the '925 Patent by offering for sale, selling, and/or using the Accused Instrumentalities. MCM has not authorized Grande's sale, offer for sale, or use of the Accused Instrumentalities.

58. On information and belief, the Accused Instrumentalities include or use a system that regulates access to a service provider network. Grande regulates access using, for example, controller nodes connected to the Grande network and certain network elements, including for example, the TiVo Premiere devices Grande provides to its subscribers.

59. On information and belief, Grande uses multiple headends for its various service areas. These headends contain equipment such as digital receivers, digital network control systems, broad-band integrated gateways, head-end QSPK and QAM modulators, or DAVIC controllers. The headends operate as the claimed controller nodes providing controller instructions to the network elements, i.e., the TiVo Premiere devices. These controller instructions regulate subscriber access to and distribution of content on the network.

60. On information and belief, each Grande headend includes at least a first processor configured to generate controller instructions and a first network interface

configured to transmit the controller instructions over the service provider network to a plurality of TiVo Premiere devices.

61.     Each network element in the system also includes at least one second network interface coupled to the service provider network and configured to receive the controller instructions from the controller node through the service provider network. On information and belief, a network interface is the DOCSIS modem of the TiVo Premiere Device.

62.     Each network element in the system includes a second processor coupled to the at least one second network interface, wherein the second processor is configured to selectively transmit the content requests to the service provider network in accordance with the controller instructions, and transfer received content data responsive to the transmitted content requests from the service provider network via the second network interface. For example, the controller node may provide a list of possible shows, movies or web content that is presented to the user as part of the user interface, as described *supra*. These suggestions change depending on the screen within TiVo Central that a subscriber is looking at and other variables.

63.     Further, prior to 2016, Hulu had been unavailable on Grande's TiVo Premiere service due to "[c]ontractual issues between the studio and Hulu." (Ex. III, FAQ, at 6.) As such, prior to 2016, Grande used controller instructions from the headend to prevent subscriber access to Hulu. Additionally, the TiVo Premiere device as used by Grande limits the ability of its subscribers to access certain portions of the internet when searching. (*Id.*) For example, Grande admits that "TiVo has an integrated search capability that finds TV shows and movies across Live TV, Grande

PLAINTIFF'S ORIGINAL COMPLAINT                                    Page 19

On Demand, Netflix, YouTube web video's (*sic*), and delivers personalized programs specifically for you. It is not designed to search the entire Internet." (*Id.*)

### Infringement of Claim 29 of the '925 Patent

64.     Claim 29 of the '925 Patent recites:

> A method for regulating access to a service provider network, the method comprising:
> generating, by a controller node coupled to the service provider network, controller instructions;
> transmitting the controller instructions, by the controller node, to a plurality of network elements of the service provider network;
> receiving, by the network elements, content requests for the service provider network;
> selectively transmitting, by the plurality of network elements, the content requests to the service provider network in accordance with the controller instructions; and
> transferring, by the network elements, received content data responsive to the transmitted content requests from the service provider network.

65.     On information and belief, Grande directly infringed and continues to infringe Claim 29 of the '925 Patent by offering for sale, selling, and/or using the Accused Instrumentalities. MCM has not authorized Grande's sale, offer for sale, or use of the Accused Instrumentalities.

66.     On information and belief, the Accused Instrumentalities perform a method for regulating access to a service provider network.

67.     On information and belief, the headends contain hardware and software to generate and transmit controller instructions to a plurality of TiVo Premiere devices coupled to Grande's network.

68.     On information and belief, the Accused Instrumentalities receive content requests for the service provider network. For example, the controller node

may provide a list of possible shows, movies or web content that is presented to the user as part of the user interface, as described *supra*. These suggestions change depending on the screen within TiVo Central that a subscriber is looking at and other variables.

69.     Further, prior to 2016, Hulu had been unavailable on Grande's TiVo Premiere service due to "[c]ontractual issues between the studio and Hulu." (Ex. III, FAQ, at 6.) As such, prior to 2016, Grande used controller instructions from the headend to prevent subscriber access to Hulu. Additionally, the TiVo Premiere device as used by Grande limits the ability of its subscribers to access certain portions of the internet when searching. (*Id.*) For example, Grande admits that "TiVo has an integrated search capability that finds TV shows and movies across Live TV, Grande On Demand, Netflix, YouTube web video's (*sic*), and delivers personalized programs specifically for you. It is not designed to search the entire Internet." (*Id.*) Therefore, any content requests must be made in accordance with the controller instructions from the controller node.

70.     In response to the content requests from TiVo Premiere devices, content from Grande's network is transferred to the subscriber.

71.     As shown above, every element of Claims 1 and 29 is found in the Accused Instrumentalities.

72.     Plaintiff has been damaged by Grande's infringing conduct and is entitled to money damages adequate to compensate for Grande's infringement of the '925 Patent, but in no event less than a reasonable royalty for the use made of the

PLAINTIFF'S ORIGINAL COMPLAINT                                          Page 21

invention by Grande, together with interests and costs as fixed by the Court pursuant to 35 U.S.C § 284.

## JURY DEMAND

73.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiff requests a trial by jury for all issues so triable by right.

## PRAYER FOR RELIEF

Plaintiff Multimedia Content Management LLC respectfully requests this Court enter judgment in its favor against Grande Communications Networks LLC, granting the following relief:

A.      An adjudication that Grande Communications Networks LLC has infringed and continues to infringe claims of the '468 Patent and the '925 Patent;

B.      An award to Multimedia Content Management LLC of damages adequate to compensate Multimedia Content Management LLC for Grande Communications Networks LLC's acts of infringement together with prejudgment interest pursuant to 35 U.S.C. § 284;

C.      An award of Multimedia Content Management LLC's costs of suit and reasonable attorneys' fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by law; and

D.      Any further relief this Court deems just and proper.

Respectfully submitted,

Dated:  November 9, 2017

/s/ J. Scott Denko
J. Scott Denko
State Bar No. 00792457
Denko@DCLLegal.com
John M. Bustamante
State Bar No. 24040618
Bustamante@DCLLegal.com
DENKO & BUSTAMANTE LLP
114 W. 7th St., Suite 1100
Austin, Texas 78701
Telephone: (512) 906-2074
Facsimile: (512) 906-2075

Craig Jepson
State Bar No. 24061364
CJepson@TLGiplaw.com
TOLER LAW GROUP, PC
8500 Bluffstone Cove, Suite A201
Austin, Texas 78759
Telephone: (512) 327-5515
Facsimile: (512) 327-5575

**ATTORNEYS FOR PLAINTIFF
MULTIMEDIA CONTENT MANAGEMENT
LLC**